UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher Amos Tate,          :
                                :
        Plaintiff,              :
                                :
        v.                      :    Case No. 2:12-cv-216
                                :
C.E. Bradley Laboratories,      :
Inc.,                           :
                                :
        Defendant.              :


OPINION AND ORDER
(Docs. 6, 8, 9, 10, 12)

Plaintiff Christopher Tate, proceeding *pro se*, brings
this action claiming that he was discriminated against on
the basis of his race when he applied for employment in
2004.  Now before the Court is Defendant C.E. Bradley
Laboratories, Inc.'s motion to dismiss the case as untimely.
Tate has responded to the motion, arguing that his history
of mental illness entitles him to equitable tolling.  Also
before the Court are Tate's motion for appointment of
counsel; motion for tolling of the limitations period;
motion to amend the Complaint; and motion for an order
compelling mediation.  For the reasons set forth below,
Tate's motion to amend his Complaint is GRANTED, and all
other pending motions are DENIED.

## Factual Background

Tate alleges that in 2004, he and another individual, Leron Bedward, went to a job agency in search of work.  The agency gave the men a reference sheet that showed Defendant C.E. Bradley Laboratories with positions for immediate hire. The two men traveled to Defendant's office, where they were met by the owner of the company.  When Tate and Bedward informed him that they had been referred by the job agency and were seeking to complete a job application, the owner allegedly told them that they must leave the premises.  Tate states in his Complaint that "[h]e made us feel like we were not suppose[d] to be in Vermont because of our skin color. The owner refuse[d] to give us [an] application because we were young and black."  (Doc. 3 at 3.)

Tate further claims that "[t]he EEOC found that we were discriminated [against]."  *Id.* at 4.  Bedward reportedly received a settlement after the EEOC administrative process, but Tate "was not present."  *Id.*  Tate acknowledges that his current Complaint may be time-barred, but asserts that he has "been trying to get stable on meds for years now."  *Id.* For relief, he is requesting compensation for earnings he could have received, as well as for emotional distress and

2

depression he allegedly suffered as a result of being made
to "feel[] worthless as a black man." *Id.*  Tate further
requests punitive damages in the amount of five million
dollars.

I.  <u>Defendant's Motion to Dismiss</u>

Defendant has filed a motion to dismiss pursuant to
Fed. R. Civ. P. 12(b)(6), arguing that any and all
limitations periods have run, including the time for filing
an administrative charge or lawsuit under Title VII, and
that Tate has "failed to allege any basis for tolling prior
to the expiration of the limitations period."  (Doc. 6-1 at
3.)  Tate acknowledges that the relevant limitations periods
have passed, but argues for equitable tolling on the basis
of "psychotic symptoms" since early 2005 "that prevented him
from exercising his right to state a claim in civil court."
(Doc. 10 at 1.)

Pursuant to Title VII, a charge of discrimination must
be filed with the EEOC within 180 days of any alleged
unlawful employment practice, or within 300 days where there
is a state or local agency with authority to grant or seek
relief from such practice.  *Robles v. Cox & Co.*, 841 F.
Supp. 2d 615, 625 (E.D.N.Y. 2012) (citing 42 U.S.C. §

2000e-5(e)(1)); *see also* 42 U.S.C. § 12117(a).  Once the administrative process is complete and the EEOC has issued a "right to sue" letter, the plaintiff is considered to have exhausted his administrative remedies.

A plaintiff must commence a Title VII claim in federal court within 90 days of his receipt of the EEOC's right to sue letter.  42 U.S.C. §§ 2000e-5(f)(1).  This limitations period is not a jurisdictional prerequisite to suit in federal court, and may be subject to equitable tolling.  *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984).  However, equitable tolling is only appropriate in "rare and exceptional circumstance[s]," such as when a party "is prevented in some extraordinary way from exercising his rights."  *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003).  For example, the Second Circuit has endorsed equitable tolling where the plaintiff (1) filed a defective pleading that otherwise would have been timely, (2) was unaware of his cause of action due to the misleading conduct of the defendant, or (3) has a medical or mental condition preventing him from proceeding in a timely fashion.  *See id.*  In such cases, a

court must also consider whether the plaintiff "(1) has acted with reasonable diligence during the time period []he seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.* at 80–81 (internal quotation omitted). *Pro se* filings, although held to more lenient standards, are not excused from establishing these elements. *See, e.g.*, *Valverde v. Stinson*, 224 F.3d 129, 133–34 (2d Cir. 2000).

In this case, Tate contends that he has been suffering from mental illness that rendered him unable to file suit until 2012. In his Complaint, he states that he seeks "exemptions under law to allow me to by[pass] the statute of limitations because [of] incompetency, involuntary commitment to state hospital, being out of the State of Vermont and not being on stable medication." (Doc. 3 at 4.) He also contends that he was unable to understand the full extent of his damages until he was "stable on medication." *Id.* Defendant contends that these claims are conclusory, and do "not state how [Tate's] mental condition 'affected [his] capacity to function generally or in relationship to [the pursuit] of [his] rights.'" (Doc. 6-1 at 2) (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)).

5

In his written opposition to Defendant's motion, Tate states that he is in the process of gathering documentation of his history of mental illness, and that his efforts are intended "to show past and current circumstance[s] that prevented the Plaintiff from exercising his right to sue in civil court for [the alleged] federal violation." (Doc. 7-1 at 1-2.) He therefore requests either an extension of time or a hearing to resolve the tolling question.

Tate subsequently filed a motion to toll the limitations period, to which he attached reports from two competency assessments conducted in 2009. The first report documents a history of mental illness that has included "multiple inpatient hospitalizations and involuntary commitments." (Doc. 10-1 at 3.) Since 2005, Tate has been involuntarily committed at least three times for inpatient psychiatric treatment, with diagnoses including Schizophrenia, Paranoid Type and Bipolar Disorder. In 2007, he was "adjudged incompetent to proceed" by a Florida court, although his competency was deemed "restored" in 2008. *Id.* To the person performing the assessment, Tate reported experiencing "delusional thought content" that involved "influence by others [sic] control in the form of others

6

hearing his thoughts and grandiosity." *Id.* at 4.  He also
stated that he experienced "mostly auditory hallucinations,
but sometimes will have visual hallucinations as well,
especially if he is off his medication and abusing drugs
such as cocaine." *Id.*

According to the second report, Tate's medical records
showed seven hospitalizations in the three years prior to
2009.  He reportedly has no history of a chronic medical
condition, but his history of mental health issues dates
back to when he was thirteen years old (Tate was born in
1984).  At the time of the assessment in March 2009, he was
receiving anti-psychotic medication.

Most recently, Tate filed a proposed Amended Complaint
in which he states that he was prevented from filing suit
"because of serious symptom[s] from schizophrenia that
cause[d] me on and off to be in a psychosis state of mind.
I would take medication for a time and became a little
better but the side effects from the medication made me not
take them and put me in delusional bipolar psychosis state
of mind."  (Doc. 11 at 3-4.)  He further explains that "I
never really got truly stable because of the side effect[s]
until I got to prison in mental health crisis unit in prison

which is a <u>transitional care unit</u> . . .  I've been in TCU for 3 years on and off."  *Id.* at 4 (emphasis in original).

"[T]he question of whether a person is sufficiently mentally disabled to justify tolling of a limitation period is, under the law of this Circuit, highly case-specific." *Boos*, 201 F.3d at 184 (holding plaintiff was not entitled to equitable tolling where her mental incapacity claim amounted to no more than a mere statement that she suffered from "paranoia, panic attacks, and depression").  Because equitable tolling is highly fact-specific, the Second Circuit has found that the issue is best analyzed in the context of summary judgment.  *See Mandarino v. Mandarino*, 180 F. App'x 258, 261 (2d Cir. 2006); *see also Stella v. Porter*, 297 F. App'x 43, 45-46 (2d Cir. 2008) (reversing dismissal pursuant to Rule 12(c) because the district court should have accepted plaintiff's allegation that he was unable to comply with subsequent time limits due to mental illness); *Brown v. Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002) (remanding for evidentiary hearing to determine whether equitable tolling of period in which to file Title VII claim was warranted in light of plaintiff's mental condition).

In this case, Tate offers assertions in his Complaint, and has provided subsequent documentation, to alert the Court that his mental illness may have made it impossible to file suit in a timely manner.  Although the dates set forth in his submissions do not completely fill the time period between the alleged discrimination in 2004 and the filing of a Complaint in 2012, "the documented period [is] sufficiently close in time to raise a reasonable inference as to his condition at the pertinent time."  *Brown*, 287 F.3d at 60.  Accordingly, accepting Tate's statements as true, the Court finds that dismissal under Rule 12(b)(6) would be premature, and that a more appropriate review of the issue may be conducted after both parties have had an opportunity to present all relevant evidence.  *See, e.g., Stella*, 297 F. App'x at 45 (specifically declining to "opine as to whether" the plaintiff's claims would survive summary judgment).  Defendant's motion to dismiss (Doc. 6) is therefore DENIED without prejudice with respect to the issue of equitable tolling.

II.  <u>Tate's Motion to Toll the Statute of Limitations</u>

Because the Court has determined that full consideration of the tolling question cannot be performed at

the pleadings stage, Tate's motion to toll the statute of
limitations (Doc. 10) is DENIED without prejudice as
premature.

III.  <u>Tate's Motion to Amend Complaint</u>

Tate has moved to amend his Complaint.  The proposed
Amended Complaint contains essentially the same facts as set
forth in the original Complaint, with a few clarifications
and additional information about Tate's mental health
background.  The motion to amend is unopposed.

Rule 15 of the Federal Rules of Civil Procedure states
that "[t]he court should give leave [to amend] freely when
justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also*
*Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir. 1980) ("A *pro se*
plaintiff, particularly one bringing a civil rights action,
should be afforded an opportunity fairly freely to amend his
complaint . . . unless it appears to a certainty that
plaintiff is entitled to no relief under any state of the
facts.").  In this case, the proposed Amended Complaint sets
forth substantially the same claims as the initial
Complaint.  The Court therefore finds no prejudice in
allowing an amended pleading, and the motion to amend (Doc.
9) is GRANTED.

IV.  <u>Tate's Motion for Appointment of Counsel</u>

Tate has also moved the Court to appoint *pro bono*
counsel to represent him.  He claims that he is currently
undergoing "intense therapy," but that his "extreme
depression and paranoia" nonetheless "prevent him from
representing himself properly."  (Doc. 8 at 1.)  Tate also
reports that he has requested *pro bono* counsel in a lawsuit
against President Obama that is currently pending in the
United States District Court for the Southern District of
Florida.

There is no constitutional rights to appointment of
counsel for litigants in civil cases.  *Cooper v. A. Sargenti
Co.*, 877 F.2d 170, 172–74 (2d Cir. 1989).  District courts
nevertheless have "[b]road discretion . . . in deciding
whether to appoint counsel."  *Hodge v. Police Officers*, 802
F.2d 58, 60 (2d Cir. 1986); *see also* 28 U.S.C. § 1915(e)(1)
(providing district courts may "request an attorney to
represent any person unable to afford counsel.").  In
considering a motion for appointment of counsel, a district
court "should first determine whether the indigent's
position [is] likely to be of substance."  *Cooper*, 877 F.2d
at 172 (internal quotation marks omitted).  Upon satisfying

this threshold requirement, the district court considers secondary factors, including the "plaintiff's ability to obtain representation independently, and his ability to handle the case without assistance in . . . light of the required factual investigation, the complexity of the legal issues, and the need for expertly conducted cross-examination to test veracity." *Id.* No single factor is controlling in a particular case, as "each case must be decided on its own facts." *Hodge*, 802 F.2d at 61.

Here, it is not clear whether Tate's underlying claim of race discrimination has merit. Nonetheless, even if the Court accepts the facts in the Complaint as true, the first question in the case is whether Tate has presented his claim in a timely manner. For that inquiry, the secondary factors set forth above do not weigh in favor of appointing counsel at this time. Specifically, Tate has begun independently presenting his case for tolling; the factual inquiry with respect to the question of tolling is also under way; the tolling issue is not particularly complex; and there is no indication that cross-examination will play a role in determining whether the equities favor a tolling of the limitations period. The motion for appointment of counsel

(Doc. 8) is therefore DENIED without prejudice to re-filing after the question of timeliness has been resolved.

V.   Tate's Motion to Compel Mediation

The final motion before the Court is Tate's "Motion for Order of Mediation," in which he asks the Court to compel a mediation session with the Defendant.  Defendant has filed an objection to the motion, and Tate does not cite any legal grounds for such an order.  While the parties are free to engage in settlement negotiations at any time, the Court sees no basis for compelling mediation at this time.  The motion to compel mediation (Doc. 12) is therefore DENIED.

## Conclusion

For the reasons set forth above, Defendant's motion to dismiss (Doc. 6) and Tate's motion for appointment of counsel (Doc. 8), motion to toll the statute of limitations (Doc. 10), and motion for an order requiring mediation (Doc. 12) are DENIED without prejudice.  Tate's motion to amend his Complaint (Doc. 9) is GRANTED.

Dated at Burlington, in the District of Vermont, this 11th day of July, 2013.

/s/ William K. Sessions III
William K. Sessions III
Judge, United States District Court